**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**DIRECTV, Inc.**

Plaintiff,

vs.

**Benjamin Liriano**

Defendant

Case No.: **04-12402 DPW**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

## I. Liability

On February 24, 2005 Default was entered against the Defendant in this action. Plaintiff has now moved for Judgment against the Defendant. The Default already entered in this Action against the Defendant is similar to a finding of liability against the Defendant. See, *Almedia v. Secretary of Health Education of Welfare*, 622 F. 2d 1044 (1st Circuit 1980). Therefore, based upon the Default that has already entered against the Defendant, the Plaintiff has now proven sufficient requisite elements to entitle the Plaintiff to a finding of liability against the Defendant as to the matters set forth in the Plaintiff's pleadings.

There were multiple counts of statutory violations in the complaint against the Defendant. However, in this motion the Plaintiff is moving for judgment under:

1. Count II, Violation of Title 18 U.S.C. § 2511, Intentional Interception of Electronic Communications; and
2. Count III, Violation of Title 47 U.S.C. § 605, Assembly, Manufacture and or Modification of Devices or Equipment.

The Plaintiff contends is entitled to judgment under all of the counts of its Complaint. Yet, the Plaintiff is moving for judgment pursuant to Counts II and III simply because that once liability is established through the Default the *minimum* statutory damage for either of these counts is $10,000.00. Accordingly, this court should be able to enter judgment with the *minimum*

statutory damages of $10,000.00 without the necessity of a hearing on damages.

**1. Pertinent Facts Regarding Liability Established From Default**

Based upon the Default that has already entered against the Defendant, the Plaintiff has proven certain pertinent facts, including but not limited to, the facts that:

1. Plaintiff is a direct satellite broadcaster, delivering over 225 channels of television and other programming to its residential and business customers on a subscription and pay-per-view basis only

2. Plaintiff encrypts – electronically scrambles – its satellite transmissions to provide security for and prevent unauthorized viewing of its satellite television programming.

3. Upon activation of an account the Plaintiff's legitimate customers are given a DIRECTV Access Card by Plaintiff;

4. With a DIRECTV Access Card and other system hardware a legitimate customer can receive and view in a decrypted format (*i.e.*, unscrambled) only those channels to which the customer has subscribed or otherwise made arrangement to purchase from Plaintiff;

5. It is possible for dishonest individuals to covertly obtain the Plaintiff's signals, without authorization and without payment for same, through a variety of methodologies, including, but not limited to, utilizing illegally modified DIRECTV Access Cards and utilizing other related equipment; devices that are primarily of assistance in the unauthorized interception or reception of DIRECTV's satellite television programming (all collectively hereinafter referred to as "Pirate Access Devices").

6. On or about September 9, 2002 the Defendant purchased and thereafter possessed a Pirate Access Device.

7. The Defendant utilized the Pirate Access Device for the unauthorized interception of the Plaintiffs satellite television signals; and/or

    8. The Defendant utilized the Pirate Access Device to intercept the Plaintiff's electronic communications without authorization; and/or

9. The Pirate Access Device purchased by the Defendant was utilized in conjunction with other devices such that the Defendant manufactured or assembled Pirate Access Devices

10. All of the Defendant's actions were undertaken willfully and knowingly.

**2. Liability Pursuant to Title 47 U.S.C. § 605 Established From Default**

Count III of this lawsuit involves violations of the Cable Communications Policy Act of 1984, as amended, Title 47 U.S.C. § 605 (the "Communications Act"). Title 47 U.S.C. 605 (e)(4) of the Communications Act provides, in part, that it shall be a violation of the statute where any person:

> "manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section …"

By virtue of the Default in this action the Plaintiff has established that the Defendant knowingly utilized the device purchased by the Defendant to manufacture or assemble Pirate Access Devices (e.g. by seriptiously modifying DIRECTV Access Cards). Accordingly, the Plaintiff has established that the Defendant violated Title 47 U.S.C. 605 (e)(4). This reading of the statute, whereby the modification of DIRECTV's Access Card is itself a violation of the manufacturing provision of Title 47 U.S.C. 605 (e)(4) was recently accepted in the case of *DIRECTV v Hite* 3:03CV449 (E.D.Va 2004) ( a copy of the unpublished case is attached hereto as "Exhibit A")

**3. Liability Pursuant to Title 18 U.S.C. § 2511 Established From Default**

Count II of this lawsuit involves violations of the Title 47 U.S.C. 18 U.S.C. § 2511 (the "Surreptitious Interception Act"). Title 47 U.S.C. 18 U.S.C. § 2511 (1)(a) provides that it shall be a violation of the statute where any person:

> "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

Title 18 U.S.C. § 2520 (a) grants the Plaintiff a civil remedy for violations of § 2511. Title 18 U.S.C. § 2520 (a) provides, in part:

> "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate."

By virtue of the Default in this Action the Plaintiff has established that the Defendant knowingly utilized the Pirate Access Device to intercept the Plaintiff's electronic communications without authorization. Accordingly, the Plaintiff has established that the Defendant violated Title 47 U.S.C. 18 U.S.C. § 2511 (1)(a), giving rise to civil cause of action pursuant to Title 47 U.S.C. 18 U.S.C. § 2520.

**II. Minimum Statutory Damages**

Based on liability set forth above the Plaintiff is entitled to a minimum statutory damage award of $10,000.00 pursuant to provisions of Title 47 U.S.C. § 605 or provisions of Title 18.

**1. Minimum Statutory Damage Award Pursuant to Provisions of Title 47 U.S.C. § 605**

Title 47 U.S.C. § 605 (e)(3)(C)(i)(II) provides for statutory damages for the assembly or manufacture of devices primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services. Section (e)(3)(C)(i)(II) provides, in part that:

> ". . . for each violation of [paragraph (e)(4)] involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000 or more than $100,000, as the Court considers just . . ."

Accordingly, the Statutory minimum damage award for the Pirate Access Device assembled, manufactured or modified by the Defendant in violation of Title 47 U.S.C. § 605(a), Title 47 § 605(e)(4) pursuant to Title 47 U.S.C. § 605(e)(3)(c)(i)(II) is $10,000.00 per device for a total damage statutory award as to the Defendant's assembly, manufacture or modification of Pirate Access Devices of $10,000.00.

**2. Minimum Statutory Damage Award Pursuant to Provisions of Title 18 U.S.C. § 2520**

Title 18 U.S.C. § 2520(c)(2)(B) provides for civil statutory damages for the surreptitious interception of electronic communications in violation of Title 18 U.S.C. § 2511. Title18 U.S.C. § 2520(c)(2)(B) provides for statutory damages of " whichever is the greater of

$100 a day for each day of violation or $10,000". This provision of § 2520 amounts to a minimum statutory damage award of $10,000.00 for a violation of Title 18 U.S.C. § 2511. See *Desilets v Wal-Mart Stores, Inc.*, 171 F. 3rd 711 (1st Cir. 1999).

In the *Wal-Mart* case the First Circuit dealt with the damage provisions of § 2520 on an appeal from the District of New Hampshire. The trial court had made an award of $20,000.00 for each of the multiple plaintiffs pursuant to § 2520 under the theory that there was a $10,000.00 minimum statutory damage award for the interception of the plaintiffs' communications and a separate $10,000.00 minimum statutory damage award for the dissemination of the communications. The first circuit rejected the double award but the court used explicit language with reference to the minimum statutory damage award provision saying:

> No doubt the provision anticipates a range of possible circumstances, extending from one violation on one day to scores of distinct violations on another day, and even a multitude of days on which violations occur, perhaps extending over many months. Whatever the circumstances, however, if violations occur on 100 days *or less*, then the minimum statutory award of $10,000 must be paid. If, on the other hand, violations occur on more than 100 days, then of course the higher statutory award of $100 per day must be paid. *Id* at 714 (emphasis in the original)

Accordingly, the Statutory minimum damage award for the Defendant's utilization of the Pirate Access Device to intercept the Plaintiff's electronic communications without authorization in violation Title 47 U.S.C. 18 U.S.C. § 2511 (1)(a) is $10,000.00 pursuant to Title 18 U.S.C. § 2520(c)(2)(B).

## III. Injunctive Relief

This Court Should Permanently Enjoin the Defendant From Committing Or Assisting In The Commission Of Any Violation Of 47 U.S.C. § 605 or 18 U.S.C. §§ 2511. The Plaintiff

requests injunctive relief under the express provisions of the Communications Act and the Surreptitious Interception Act.

The Communications Act provides as follows

> "(e)(3)(B)(i) The court may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of [the Communications Act]."

*See* 47 U.S.C. § 605(e)(3)(B)(i).

The pertinent language under section 2520 of 18 U.S.C. provides that the Court may award, "such preliminary and other equitable or declaratory relief as may be appropriate." *See* 18 U.S.C. § 2520(b)(1). Accordingly, this Court is authorized to permanently enjoin Defendant from committing or assisting in the commission of any violation of 47 U.S.C. § 605, or violations of 18 U.S.C. § 2511 and should do so to prevent such violations.

The Plaintiff need not prove irreparable harm for the injunction to issue. Where express authority for issuance of statutory injunctions is provided by legislative enactment, an injunction may issue without resort to the traditional "equitable" prerequisites so long as liability has been established under the statute. See *General Instrument Corp. v. Nu-Tek Electronics & Manufacturing, Inc.*, 3F. Supp 2d 602, 607 (E.D.Pa.1998), aff'd 197F.3d 83 (3d Cir.1999). The terms of the requested injunction are reasonably drafted to thwart any future piracy activities by the Defendant.

**IV. Attorney's Fees and Costs**

Both Title 18 U.S.C. § 2520(b)(3) and /or Title 47 U.S.C. § 605(e)(3)(B)(iii) provides that the Court should direct the recovery of full costs, including awarding reasonable attorneys fees to

aggrieved party who prevails. The First Circuit follows the "lodestar" approach when awarding attorney's fees pursuant to a Federal statutory authorization. See, *Furtado v. Bishop*, 635 F.2d 915, (1st Cir. 1980). Using the "lodestar" approach, the Court would normally multiply the number of hours worked by a reasonable hourly rate. Utilizing the "lodestar" approach, the Court would, in essence, multiply the reasonable number of hours worked by a reasonable hourly rate.

In the Plaintiff's complaint the Plaintiff specifically requested an attorney's fee of $850.00 upon the default of the Defendant. The Plaintiff would be entitled to more than this amount pursuant to the "lodestar" approach but for the sake of clarity and simplicity the Plaintiff is in essence seeking this lesser, lump sum amount for Attorneys fees.

## V. CONCLUSION

For the reasons set forth above, the Plaintiff, DIRECTV, respectfully requests that this Court:

(1) Award to DIRECTV full statutory damages in the amount of $10,000.00, plus full costs in the amount of $198.90 and attorneys' fees in the amount of $850.00;

(2) Permanently enjoin Defendant from committing or assisting in the commission of any violation of 47 U.S.C. § 605 or 18 U.S.C. § 2511 and

(3) Grant DIRECTV such other and further relief as this court deems equitable, just and proper.

Respectfully Submitted for the Plaintiff,

2/18/05
Date

/s/ John M. McLaughlin

John M. McLaughlin (BBO:556328)
**Green, Miles, Lipton & Fitz-Gibbon**
P.O. Box 210
77 Pleasant Street
(413) 586-0865

Page 9



Case 1:04-cv-12402-DPW     Document 7     Filed 03/22/2005     Page 9 of 9

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| DIRECTV, INC.<br><br>Plaintiff.<br><br>v.<br><br>GEORGE HITE, et al.<br><br>Defendants. | Civil Action Number 3:03CV449 |

**FINAL ORDER**

Pursuant to the accompanying Findings of Fact and Conclusions of Law, IT IS ORDERED AND ADJUDGED that judgment is awarded in favor of Plaintiff DIRECTV, Inc., against Defendant Douglas Mitchell, in the amount of $10,000 in statutory damages, plus interest at a judgment rate of 1.28% until paid, plus $7,373.24 in attorney's fees and costs. The total attorney's fees includes attorney's fees of $1,733.00 relating to the aborted deposition and the Motion for Sanctions against Defendant Mitchell.

Moreover, Defendant Mitchell is PERMANENTLY ENJOINED from committing or assisting in commission of any violation of 47 U.S.C. § 605, 18 U.S.C. §§ 2511 or 2512. The remaining Defendants in this case have been dismissed by Court Orders. Accordingly, this matter is closed.

Defendant is advised that pursuant to Federal Rule of Appellate Procedure 4, he may appeal this Court's decision to the United States Court of Appeals for the Fourth Circuit by filing a Notice of Appeal with the district clerk within thirty (30) days of this Order.



Let the Clerk send a copy of this Order to all parties of record.

It is SO ORDERED.

UNITED STATES DISTRICT JUDGE

FEB 13 2004

DATE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

FILED
FEB 13 2004
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

DIRECTV, INC.

Plaintiff.

v.

Civil Action Number 3:03CV449

GEORGE HITE, et al.

Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court having heard evidence and argument at a non-jury trial on February 12, 2004, hereby makes the following findings of fact and conclusions of law:

### I. FINDINGS OF FACT

This is an action for injunctive relief and damages for the improper receipt, transmission, and use of satellite programming signals. The Plaintiff is DIRECTV, Inc. ("DIRECTV"), a California corporation. The Defendant, Douglas Mitchell ("Mitchell"), resides in Hopewell, Virginia. The other Defendants in this case have been dismissed pursuant to Court Orders.

DIRECTV is in the business of distributing satellite television broadcasts throughout the United States. DIRECTV markets several different satellite television packages. Consumers may select from forty premium movie channels, such as Home Box Office, Showtime, and Cinemax, as well as local channels for many markets throughout the United States. DIRECTV targets individuals interested in specialized sports packages and offers subscriptions to those specialized sporting packages, including professional football, basketball, hockey, baseball, and soccer. DIRECTV also



offers specialized, one-time-viewing movies and events in the form of pay-per-view channels, and numerous pay-per-view boxing and special event matches. Acquiring the rights to distribute all of this television programming results in significant expense to DIRECTV.

DIRECTV has invested billions of dollars to develop its satellite system. In order to provide security for and prevent unauthorized viewing of its programming, DIRECTV encrypts, i.e., electronically scrambles, its satellite transmissions. Each DIRECTV customer obtains system hardware, including a receiver and a small satellite dish, that is provided with a DIRECTV access card and is required to establish an account with DIRECTV. On activation of the account and payment of the subscription price, DIRECTV activates the access card by permitting the customer to receive and view in a decrypted, i.e., unscrambled, format those channels to which the customer has subscribed or otherwise made arrangements to purchase from DIRECTV.

DIRECTV created and staffed the Office of Signal Integrity in order to investigate and prevent the theft of DIRECTV satellite programming. In addition to the cost of a permanent, full-time investigative staff, DIRECTV has, on a case-by-case basis, contracted with private investigators to assist in its investigation into allegations of signal theft.

In order to address piracy problems, DIRECTV periodically transmits electronic countermeasures ("ECMs"), which are electronic signals sent through the data stream to disable illegal access cards. This requires the expenditure of funds to purchase sample illegal devices from the pirate marketplace for testing, and the devotion of engineering time to write the software for, test, and implement the ECM. In addition, DIRECTV created the End-User Development Group to pursue end-users of pirate devices.

Piracy affects DIRECTV immeasurably. An individual using one pirated access card has access to over a million dollars worth of programming services annually. While this includes the purchase price of every program broadcast on each channel every day, the value of subscriptions and movies viewed only once is well over $150,000 annually.

On May 25, 2001, DIRECTV executed Writs of Seizure at the mail shipping facility used by several major distributors of pirate access devices, including, among others, Vector Technologies, DSS-Stuff, Shutt, Inc., Whiteviper, Intertek, and DSS-Hangout (collectively, the "Fulfillment Pirate Group"). During and subsequent to the raid, DIRECTV obtained a substantial body of various business records evidencing the ongoing illegitimate enterprise, including orders, invoices, electronic communications, shipping documentation, purchase receipts, and credit card receipts. Each record confirmed the existence of a source for the country-wide distribution of devices primarily designed for the unauthorized interception of DIRECTV's satellite programming. Moreover, the records plainly evidenced Defendant Mitchell's purchase of pirate access devices from a member of the Fulfillment Pirate Group.

On March 7, 2001, Defendant Mitchell purchased two pirate access devices from the Fulfillment Pirate Group. Defendant Mitchell placed his order using interstate or foreign wire facilities, and received his order through the United States Postal Service or commercial mail carrier. Specifically, Defendant Mitchell purchased a Vector Super Unlooper w/ X Code and a Vector Smart Card Emulator.

The Unlooper and the Emulator are designed specifically to permit the surreptitious interception of DIRECTV satellite programming. The Unlooper is designed to restore functionality to illegally modified DIRECTV access cards that were disabled by misuse or by DIRECTV's ECMs,

and is specifically designed for use with certain software further permitting the illegal programming of valid DIRECTV access cards. Furthermore, the purchase of an Unlooper indicates that the person purchasing it already possessed one or more illegally modified DIRECTV access cards. The Emulator is a printed circuit board device.

The Unlooper and Emulator were shipped from the Pirate Fulfillment Group to Defendant Mitchell at his address in Hopewell, Virginia. Mitchell then used the pirate devices to facilitate the viewing of DIRECTV programming without payment.

## II. CONCLUSIONS OF LAW

Defendant Mitchell violated the Federal Communications Act, 47 U.S.C. § 605(a), by receiving or assisting others in receiving DIRECTV's satellite transmissions of television programming without authorization, and used such transmission for his own benefit or the benefit of another not entitled thereto. DIRECTV has proprietary rights in the intercepted satellite transmission. Mitchell's violation has injured and will continue to injure DIRECTV by depriving DIRECTV of its ability to maximize revenues, which it seeks to derive from satellite transmissions.

Defendant Mitchell also violated the Federal Communications Act, 47 U.S.C. § 605(e)(4), by assembling or modifying devices, knowing or having reason to know that the devices were primarily used for the unauthorized decryption of DIRECTV's satellite transmissions of television programming, or were intended to assist other persons in the unauthorized reception and use of DIRECTV's encrypted satellite transmissions of television programming. DIRECTV has proprietary rights in its satellite transmission. Mitchell's violation has injured and will continue to injure DIRECTV by depriving DIRECTV of its ability to maximize revenues, which it seeks to derive from satellite transmissions.

Finally, Defendant Mitchell violated the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1)(a), by intentionally intercepting, attempting to intercept, or having another person intercept or attempt to intercept, DIRECTV's encrypted satellite transmission of television programming. DIRECTV has proprietary rights in its satellite transmission. Mitchell's violation has injured and will continue to injure DIRECTV by depriving DIRECTV of its ability to maximize revenues, which it seeks to derive from satellite transmissions.

An appropriate Order shall issue.

Let the Clerk send a copy of this Findings of Fact and Conclusions of Law to all parties of record.

It is SO ORDERED.

James R. Spencer

UNITED STATES DISTRICT JUDGE

FEB 13 2004

DATE